UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOE BLAKELY as Personal )
Representative of the Estate )
of George Blakely, Jr., )
deceased )
 )
      Plaintiff, )
 )
 ) Case No. 08 C 3783
 )
  v. ) Magistrate Judge
 ) Arlander Keys
 )
TRI-COUNTY FINANCIAL GROUP, )
INC., doing business as )
First State Bank of Mendota, )
ET AL )
 )
      Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff is the personal representative of the estate of his father, George O. Blakely, Jr. The underlying litigation involves the post-foreclosure disposition of collateral pledged as security for two loans. Plaintiff alleges various state law claims against Defendants Tri-County Financial Group, Inc.,[1] and First State Bank, Inc.[2] Before the Court is Defendant First State Bank's motion for summary judgment and Plaintiff's cross-motion for partial summary judgment. For the reasons set forth below, Defendant's motion is granted. Plaintiff's motion is

---

[1] Defendant alleges and Plaintiff does not dispute, that Tri-County Financial Group, Inc., is the parent company of First State Bank.

[2] First State Bank maintains that it is improperly identified as "First State Bank, Inc."

denied.

## Background

George Blakely (hereinafter "George") entered into an agreement to develop Blakely's Estates, a residential subdivision in Dalzell, Illinois. As inducement to do so, the Village of Dalzell (Village) established a tax increment financing (TIF) district that was to remain for twenty years. During that time, George would receive 75% of the TIF proceeds; the Village would collect the remaining 25%.

After construction of the subdivision began, George approached First State Bank (Bank) for a loan in the amount of $695,000. As collateral, he gave the Bank a mortgage on Blakely's Estates and also assigned his rights to the TIF payments. George later sought an additional loan from First State Bank. This time he requested $125,000; he secured the promissory note with a deed to property in Atlanta owned by his wife. Unfortunately, George was unable to meet his financial obligations on either note, and the Bank obtained orders of foreclosure on both. At the resulting foreclosure sale, the Bank, as the lone bidder, offered the sum of the principal of both notes. Because George owed the Bank approximately $1,025,000 at the time of foreclosure, it sought and was awarded a deficiency judgment in the amount of $195,000.

In 1999, First State Bank asserted its rights to the TIF

payments pursuant to U.C.C. § 9-502 (now § 9-607).[3] At the same time that it was collecting the sums, it attempted to foreclose on Mrs. Blakely's property located in Atlanta. This proved to be unsuccessful. On June 3, 2003, the Bank issued notification to George of its proposal to accept the 20-year TIF revenue stream in full satisfaction of its claim against him, a procedure known as strict foreclosure. See U.C.C. § 9-620, which provides as follows:

> 9-620. Acceptance of collateral in full or partial satisfaction of obligation; compulsory disposition of collateral
>
> (a) [Conditions to acceptance in satisfaction.] Except as otherwise provided in subsection (g), a secured party may accept collateral in full or partial satisfaction of the obligation it secures only if:
>
> (1) the debtor consents to the acceptance under subsection (c);
>
> (2) the secured party does not receive, within the time set forth in subsection (d), a notification of objection to the proposal authenticated by:
>
> (A) a person to which the secured party was required to send a proposal under Section 9-621; or
>
> (B) any other person, other than the debtor, holding an interest in the collateral subordinate to the security interest that is the subject of the proposal;
>
> (3) if the collateral is consumer goods, the collateral

---

[3] Whether the law of Florida or Illinois governs is not a matter presently before the Court and nothing in this opinion is meant to decide the issue. Having found that both states have adopted the applicable provisions of the Uniform Commercial Code with minor, if any, modifications, the Court cites to the Code generally as opposed to the state-specific sections.

is not in the possession of the debtor when the debtor consents to the acceptance; and

(4) subsection (e) does not require the secured party to dispose of the collateral or the debtor waives the requirement pursuant to Section 9-624.

(b) [Purported acceptance ineffective.] A purported or apparent acceptance of collateral under this section is ineffective unless:

(1) the secured party consents to the acceptance in an authenticated record or sends a proposal to the debtor; and

(2) the conditions of subsection (a) are met.

(c) [Debtor's consent.] For purposes of this section:

(1) a debtor consents to an acceptance of collateral in partial satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default; and

(2) a debtor consents to an acceptance of collateral in full satisfaction of the obligation it secures only if the debtor agrees to the terms of the acceptance in a record authenticated after default or the secured party:

(A) sends to the debtor after default a proposal that is unconditional or subject only to a condition that collateral not in the possession of the secured party be preserved or maintained;

(B) in the proposal, proposes to accept collateral in full satisfaction of the obligation it secures; and

(c) does not receive a notification of objection authenticated by the debtor within 20 days after the proposal is sent.

(d) [Effectiveness of notification.] To be effective under subsection (a)(2), a notification of objection must be received by the secured party:

(1) in the case of a person to which the proposal was sent pursuant to Section 9-621, within 20 days after

notification was sent to that person; and

(2) in other cases:

(A) within 20 days after the last notification was sent pursuant to Section 9-621; or

(B) if a notification was not sent, before the debtor consents to the acceptance under subsection (c).

The text of the letter, sent by the Bank's Executive Vice President, Goodwin W. Toraason (Toraason), follows:

Dear Mr. Blakely:

First State Bank (the "Bank") has a security interest in the following described property (the "Collateral"):

> All tax increment financing (TIF) payments under a certain Redevelopment Agreement dated November 6, 1995 between the Village of Dalzell, an Illinois municipal corporation, and George Blakely.

The Collateral secures your obligations to the Bank under two promissory notes dated July 7, 1997 in the principal amounts of $695,000.00 (Loan No. 92692) and $125,000.00 (Loan No. 92693), respectively (the "Obligations").

Pursuant to the Uniform Commercial Code Sections 9-620 and 9-621, First State Bank hereby unconditionally proposes to accept the Collateral in full satisfaction of the Obligations. As of June 3, 2003, the amount of the Obligations, including principal, interest and all other charges is $261,041.65. Interest of $63.32 accrues each day at the judgment interest rate of 9.00% per annum.

The Bank's acceptance of the Collateral in full satisfaction of the Obligations shall be effective June 24, 2003 unless on or before June 23, 2003 we receive a notification of objection authenticated by (I) you, (ii) a person to which we were required to send this proposal under Section 9-621, or (iii) any other person holding an interest in the Collateral subordinate to our security interest. If we have not received an authenticated notification of objection by June 23, 2003, the Obligations will be fully satisfied and you will have no further liability to the Bank with respect to the

> Obligations.
>
> Any notification of objection should be sent to 706 Washington Street, P.O. Box 50, Mendota, Illinois 61342. If you have any questions, you may call me at 815-538-2265.

On the following day, June 4, 2003, counsel for Defendant, M. Timothy Hanlon, sent an additional letter to George; the substance of the letter is virtually identical to that of the first.

James Hurley, the attorney representing George at the time, responded on June 27, 2003. His letter follows:

> Dear Mr. Hanlon,
>
> I have been given your letter to Mr. Blakely. We represent him in all of his affairs involving the Village of Dalzell and the First State Bank. I am joined in that relationship by Robert Josefsberg and Katherine W. Ezell of the firm, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin and Perwin, P.A. in Miami.
>
> I also represented Mrs. Blakely in Atlanta in an action that the bank instituted against her foreclosing on her home which supposedly involved the selfsame debts referenced in your letter.
>
> A brief outline of the history of the obligations of the Blakely family to the bank may be helpful. George Blakely undertook a development in Illinois of property he owned giving the development the name "Blakely Estates". That was financed by the bank, your client. The two notes to which you refer were the evidence of his obligations on that account.
>
> As part of that development the bank took a mortgage on the property in Illinois, a mortgage on property in Atlanta which was the home of Mrs. Blakely, and an assignment of TIF funds, all as security for the loans evidenced by the notes.
>
> In April 1998 the bank commenced foreclosure proceedings

in Illinois on both notes and in July, 1999 it bid the total sum of the principal of both notes at the sale. It obtained a deficiency Judgment in that proceeding for approximately 195,000.00.

At about the same time the bank gave notice of its assignment to the individual who was responsible by virtue of an agreement among the appropriate parties for distribution of the Tax Increment generated by the development. From very nearly the beginning of the collection of those taxes the bank has received all of the increment due George Blakely as the developer. I expect that the sums the bank has been paid commencing in 1999 to date amount to about $140,000.00. The bank credited those funds to a development account and used them to pay for infrastructure improvements to the property it now owns. The bank claimed it owned the funds as result of its bid at the Illinois foreclosure. It maintained that position consistently throughout an entire Atlanta bankruptcy proceeding. The Atlanta proceeding was occasioned by the bank's attempt to foreclose upon the home of the developer's spouse. Georgia has a unique non-judicial foreclosure system which requires a mortgagee who desires to contest a foreclosure to file bankruptcy to force trial of the bank's claim in the bankruptcy court. The parties settled the bankruptcy claim and in the instant case the bank's claim was dismissed, the bankruptcy proceeding was dismissed and the bank's mortgage was released.

George Blakely has never received any credit for the payment of his TIF funds to the bank. The only debt that is owed the bank by George Blakely is the balance due if any on a deficiency judgment created by operation of Illinois law. The bank accepted it, made its claim in Atlanta based upon it, and used it to levy on and thus acquire title to, two lots in Illinois owned by George. To now claim there is something due on the foreclosed notes is wrong. Not only is it wrong but it is evidence of the bank's bad faith breach of its obligations to George.

The bank was offered payment of the deficiency in full in the Atlanta settlement negotiations and turned it down contending that it owned the TIF funds outright.

The bank is now claiming that it is entitled to retain some $140,000.00 paid it out of the developer's share of

> the TIF and take over his right to $650,000.00 more to
> satisfy a debt which on proper accounting will prove to
> be less than $200,000.00.
>
> We do not believe a court of equity will permit such an
> outrage. Nor do we believe you were conversant with all
> of these facts.
>
> Settlement still is a possibility. Understand we are not
> responding per your request and this is not an objection
> made under or pursuant to any UCC requirement. This debt
> is a judicial one governed in our view by Illinois law of
> foreclosure. The bank's only valid evidence of debt is
> a judgment.
>
> We are willing to discuss settlement. Robert Vickery, a
> bank director is someone who the undersigned trusts so it
> might be well to involve him in any negotiation. Our
> experience with the bank's representatives up to now has
> not been good, there were attempts by these
> representatives to use documents of dubious lineage to
> establish the bank's claim in the Atlanta proceeding. If
> the bank wants this matter behind it and is willing to
> accept payment of the judgment with interest we are well
> on the way to a solution.

There was no other correspondence – from either party – for more than four years regarding the payments. George Blakely passed away on October 5, 2007, and his son, Joe Blakely, was subsequently appointed as the personal representative of his estate. On July 2, 2008, Joe filed the underlying five-count Complaint on behalf of the estate. He alleges violation of the Illinois Uniform Commercial Code, unjust enrichment, and conversion, and requests that the Court 1) impose a constructive trust on the amount of proceeds received by First State Bank in excess of the amount owed by George Blakely, and 2) order an accounting of all TIF payments received by the Bank as well as

the manner in which the payments were applied against George's deficiency judgment.

Motions for summary judgment followed. While Defendant moves for summary judgment on Plaintiff's claims in their entirety, Plaintiff seeks summary judgment only on the issue of whether Defendant is entitled to receive TIF payments after satisfaction of its deficiency judgment against George.

## Standard of Review

Summary judgment is proper if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Though this standard places the initial burden on the moving party, once it has met this burden of production, the nonmoving party "may not rely merely on allegations or denials in its own pleading" but instead must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). When deciding whether summary judgment is proper, the Court must accept the nonmoving party's evidence as true and

draw all inferences in favor of that party. *See Anderson*, 477 U.S. at 255.

## Discussion

In deciding the parties' motions, the Court need only resolve a single issue: whether a strict foreclosure of the TIF revenue was effectuated. Though Plaintiff argues that the June 27 letter from Attorney Hurley was a valid objection to Defendant's proposal, Defendant, not surprisingly, maintains that it was not. And because Plaintiff failed to oppose the proposal, First State Bank contends, the strict foreclosure was effective. Thus, it is entitled to all future TIF payments.

Defendant specifically argues that 1) the letter was not signed in accordance with the requirements of the statute, 2) it was mailed to an address other than that required, and 3) the explicit language of the letter precludes it from being an objection.

### A. Authentication

Defendant argues that Attorney Hurley's correspondence is not an objection because the letter was signed by counsel, as opposed to his client.

Section 9-620 of the Code requires that an objection be authenticated by the debtor. "Authenticate," the Code provides, means "to sign." U.C.C. § 9-102(a)(7). While Defendant maintains that the statute requires the debtor, himself, to sign

the notification, the Court disagrees. "[I]t is a black-letter tenet of our law of mandate that when a client engages an attorney to perform legal services, a principal-agent relationship is established, in which the attorney acts as agent for the client." *Advocate Fin., L.L.C. v. Longenecker & Assocs. Ltd.*, 3 So. 3d 1, 7 (La. Ct. App. 2008). To be sure, the Code acknowledges as much. *See* U.C.C. § 1-103(b) ("Unless displaced by the particular provisions of [the Uniform Commercial Code], the principles of law and equity, including the law merchant and the law relative to capacity to contract, *principal and agent*, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.")(emphasis added). There is nothing in § 9-620 that would indicate an intent by the drafters of the statute to supplant the aforementioned general principle. The Court finds that Attorney Hurley's signature on the letter satisfies the authentication requirement.

## B. Notification

First State Bank next maintains that the June 27 letter was not an objection because it was not sent to the Bank's address. This argument merits little discussion.

In order that notification of objection be effective, the secured party must receive notification within either 20 or 30 days (depending on whether Illinois or Florida law governs) from

11

the date that the proposal was sent. See 810 ILCS 5/9-620; FLA. STAT. ANN. § 679.620. For purposes of the Code, a person gives "notification to another person by taking such steps as may be reasonably required to inform the other person in ordinary course." U.C.C. § 1-202. Similarly, a person receives notification when it comes to the person's attention or "is duly delivered in a form reasonable under the circumstances at the place of business through which the contract was made or at another location held out by that person as the place for receipt of such communications." Id. Defendant is not arguing that it never received notice. Nor does it maintain that Attorney Hurley's letter was received after the statute's deadline. Its sole contention is that the correspondence was not mailed to the address held out by the Bank as the place for receipt of any notification of objection; specifically, its Washington Street address. Defendant's argument that the objection was ineffective as a result is misplaced. In light of the Court's earlier ruling, mailing the letter to the Bank's counsel was a reasonable means of effectuating notice. Attorney Hanlon had previously held himself out as the Bank's attorney in the matter to which the letter pertained. Further, it is uncontroverted that Defendant did, indeed, receive the letter. Therefore, the Court finds that the means of notification was satisfactory.

## C. Language of Letter

Defendant's most persuasive argument is its final one – that the express language of the letter precludes it from being an objection.

To prevent a strict foreclosure, the debtor must notify the secured party of its objection within the stipulated time. U.C.C. § 9-620. Defendant argues that the June 27 letter was not an objection because the letter, itself, says that it was not. It relies on the following statement, "Understand that *we are not responding per your request* and *this is not an objection made under or pursuant to any UCC requirement.*" (emphasis added). Plaintiff challenges this characterization and urges the Court to read the letter in the proper "context." In support of its position, it submitted the Affidavit of Attorney Hurley, who stated that he "unequivocally rejected the Bank's offer to accept the remaining TIF payments in exchange for an extinguishment of the deficiency judgment." Hurley Aff. ¶ 8. The Court disagrees. While the remainder of the letter clearly indicates that George was not in agreement with the manner in which the Bank had proceeded, and possibly demonstrates a misunderstanding of the relevant law, counsel in no uncertain terms stated that it was not an objection to the proposal, as required by the Code. And though the Court agrees with Plaintiff that there are no "magic words" required to object, counsel's words to the contrary

13

sufficiently expressed his desire not to do so.

Plaintiff's argument that the potential windfall to the Bank requires that the letter be deemed an objection also lacks merit. In support of its contention, Plaintiff cites to a passage from the Official Comment to § 9-620. However, a closer reading reveals that an important part of the discussion is missing from the recitation. Indeed, the Comment states that

> Section 1-203 imposes an obligation of good faith on a secured party's enforcement under this Article. This obligation may not be disclaimed by agreement. See Section 1-102. Thus, a proposal and acceptance made under this section in bad faith would not be effective. For example, a secured party's proposal to accept marketable securities worth $1,000 in full satisfaction of indebtedness in the amount of $100, **made in the hopes that the debtor might inadvertently fail to object**, would be made in bad faith. On the other hand, in the normal case *proposals and acceptances should be not second-guessed on the basis of the "value" of the collateral involved*. Disputes about valuation or even a clear excess of collateral value over the amount of obligations satisfied do not necessarily demonstrate the absence of good faith. (emphasis added).

It appears as though the drafters at least contemplated that on certain occasions a windfall may result. Consequently, this is not a sufficient basis to declare the letter an objection. When faced with similar facts, the court in *Eddy v. Glen Devore Pers. Trust*, No. 54868-9-I, 2006 Wash. App. LEXIS 86 (Wash. Ct. App. Jan. 23, 2006), agreed.

In *Eddy*, the plaintiff pledged a $90,000 promissory note to secure a $5,000 debt. *Id.* at *1-2. After the plaintiff defaulted on his obligation, the defendant sent notice to the

14

plaintiff of its intent to accept the note in satisfaction of its claim against the plaintiff. *Id.* at *2. The plaintiff failed to respond within the statutory period. *Id.* He later filed suit against the defendant and argued, *inter alia*, that strict foreclosure in his case was unfair because the defendant "retained collateral that was worth many times more than [his] obligation." *Id.* at *10. The trial court disagreed and the appellate court affirmed the decision, holding that the plaintiff had lost his rights in the collateral by failing to object within the time prescribed. *Id.* at *10.

Plaintiff's memorandum is replete with arguments that the result here produces a windfall for Defendant, and this may indeed be the outcome. But Plaintiff has only his former counsel to blame for his failure to perform the statutory requirement, as counsel clearly knew about the statute's requirement and explicitly chose **not** to object in accordance with the statute. The strict foreclosure could have easily been prevented by simply objecting. Plaintiff argues that this is a case of first impression for the Court, "likely because no creditor has previously attempted to use UCC strict foreclosure on a 20-year revenue steam that had been pledged as collateral." The Court thinks instead that this is likely because no debtor would allow this, choosing instead to vociferously express two words, "I object." Or certainly not deciding to state specifically that

15

the debtor was not, in fact, objecting. The Court is reminded of the old adage "bad facts make bad law"; this case is a prime example of such. The outcome here is harsh, no doubt, and as much as the Court would like to now save Plaintiff from the actions of his father and former counsel, it cannot. Because Plaintiff failed to raise a genuine issue of material fact as to whether the letter was an objection, he cannot proceed with his claims.

## Conclusion

For the reasons set forth above, Defendant First State Bank's Motion for Summary Judgment is granted. Plaintiff's motion is denied.[4]

Date: March 29, 2010         E N T E R E D:

*Arlander Keys*
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

---

[4] In his Complaint, Plaintiff alleges that Tri-County Financial Group, Inc., does business as First State Bank of Mendota. In its Answer, First State Bank denies this allegation. In light of the Court's ruling as to Defendant First State Bank and the legal relationship between the Bank and Tri-County Financial Group, Inc., it necessarily follows that all claims against Tri-County are also dismissed.

16